## Case No. 15,268.

### UNITED STATES v. GRUSH.

[5 Mason, 290; 1 U. S. Law Int. 214.] [1]

Circuit Court. D. Massachusetts. May Term, 1829.

FEDERAL JURISDICTION—HIGH SEAS—ARM OF SEA —BOSTON HARBOR.

1. The words "high seas" in the crimes act of 1825, c. 276, § 22 [3 Story's Laws, 2006; 4 Stat. 121], mean the uninclosed waters of the ocean on the sea-coast outside of the fauces terræ.

[Cited in The Harriet, Case No. 6,099; U. S. v. Wilson, Id. 16,731; Miller's Case, Id. 9,-558; The Helen Brown, 28 Fed. 112; U. S. v. Peterson, 64 Fed. 146; U. S. v. Rodgers, 150 U. S. 254, 14 Sup. Ct. 111.]

[Cited in Baker v. Hoag, 7 N. Y. 561, 562.]

2. The state courts have jurisdiction of offences committed on arms of the sea, creeks, havens, basins, and bays, within the ebb and flow of the tide, when those places are within the body of a county; and in such cases the circuit courts of the United States have no jurisdiction under the said statute.

[Cited in U. S. v. New Bedford Bridge, Case No. 15,867; Waring v. Clarke, 5 How. (46 U. S.) 481; U. S. v. Plumer, Case No. 16,-056; U. S. v. Steam Vessels of War (Porter v. U. S.) 106 U. S. 612, 1 Sup. Ct. 539.]

[Cited in Com. v. Peters, 12 Metc. (Mass.) 395; Baker v. Hoag, 7 N. Y. 561, 562; Mahler v. Norwich & N. Y. Transp. Co., 35 N. Y. 356.]

3. Where an arm of the sea or creek, haven, basin, or bay is so narrow that a person standing on one shore can reasonably discern, and distinctly see, by the naked eye, what is doing on the opposite shore, the waters are within the body of a county

[Cited in Rowe v. Smith, 51 Conn. 270; People v. Board of Sup'rs Richmond Co., 73 N. Y. 396; Chase v. American Steamboat Co., 9 R. I. 421.]

4. In such waters it seems, that the admiralty and common law courts have concurrent jurisdiction.

5. The county of Suffolk, in which the city of Boston is included, extends to all waters between the circumjacent islands, down to the Great Brewster, and Point Allerton.

[Cited in State v. Conley, 39 Me. 92.]

Indictment against the prisoner [Thomas Grush] for an assault on one Neil Lemon with a dangerous weapon, and with an intent to kill, founded on the act of congress of 1825, c. 276, § 22 [3 Story's Laws, 2006; 4 Stat. 121]. The indictment contained several counts, in some of which the offence was alleged to be committed on the high seas, and in others in Massachusetts Bay. The prisoner pleaded not guilty, and was convicted of the offence by the jury.

A motion for a new trial, on the ground of the want of jurisdiction of the court, was made, and also a motion in arrest of judgment, on the ground, that in the caption of the indictment, there were not after the words in the margin, "District of Massachusetts," the letters "SS." These motions were

argued by the prisoner's counsel and the district attorney.

For the prisoner it was contended, by Mr. Parker, that the locus in quo was neither on the high seas, nor in Massachusetts Bay, nor out of the jurisdiction of the commonwealth of Massachusetts, but in the harbour and port of Boston, in the county of Suffolk. That the Massachusetts statute of 1790 (volume 1, c. 4, p. 383) spoke of the Light-House or Light-House Island in the harbour of Boston. This was the outer light-house. The Massachusetts statute of 1819 (volume 2, c. 69, p. 517) spoke of Hallway Rock in Boston Bay and Long Island Head in Boston harbour. That in the Laws of the United States (2 Story's Ed., p. 1175; Act 1810, c. 64 [2 Stat. 611], in the 2d and 5th sections) the Greater Brewster was declared to be at the entrance of the harbour of Boston. That the force of these expressions would be apparent, by an inspection of the charts in the case. In considering Bevans's case, the place where the ship was anchored was such, that no person, standing on the main land in any direction, could testify to any events on the opposite main land, supposing the island removed. He could not find that George's Island had been ceded to the United States, although the United States government were erecting a sea-wall there at great expense.

Upon the other question, (the omission of the "SS.,") for his part he was quite willing that all the unmeaning forms of indictment should be suppressed; and this case might afford a convenient opportunity to set a useful example. He was willing that the exception should not prevail if the indictment could be supported without it. But it was his duty to his client to place it before the court for consideration. If practice be indicative of the law, it might be confidently asserted, that the "SS." had been uniformly retained in the Massachusetts state courts, and had never before been omitted in the United States courts in this district. It was used in the New York state courts. See Davis' Justice, pp. 234–237; "Dutchess County, ss.," same book, 221, and the following pages, and 240, 241. It was used by magistrates in acknowledging deeds, in taking depositions, and in the caption of all warrants. It was prescribed as a necessary part of the form in Mass. St. 1784, c. 8; also the civil writs of the United States uniformly retained it. In England, it seemed sometimes to be used, sometimes omitted. In Tremain's Pleas of the Crown, there was no omission of it. In 4 Chit. Cr. Laws, p. 17, "County of ——, to wit," was used. See pages 36, 58–61. In page 249, "West Riding of Yorkshire, to wit;" 248, "Cambridgeshire, to wit;" 343, "England, to wit." In Russ. & R. 179, reserved for the opinion of the twelve judges (Rex v. Goff), the report stated that the indictment had the common caption, "County of Hants, to wit." That

[1] [Reported by William P. Mason, Esq. 1 U. S. Law Int. 214, contains only a partial report.]

the practice in this country seemed to be universal, to retain it; it was sometimes omitted in England. That one would draw an inference from Hob. 171, 172, that like Lord Coke's &c., there was much matter of excellent learning in a "viz." He also referred to 7 Dane, Abr. c. 218, art. 5, and the various cases there cited.

On the part of the United States it was contended, by Mr. Dunlap, that in relation to the question respecting the jurisdiction of the courts of the United States, raised in this prosecution (which was instituted before he came into the office of attorney of the United States), it certainly was one of great importance, affecting the sovereignty of one of the states of the Union. He referred the court to the following authorities: 1 Hale, P. C. 424; 2 Hale, P. C. 15–54; East, P. C. 804; 1 Leach, 388; 2 Leach, 1093; U. S. v. Smith [Case No. 16,337]; [U. S. v. Wiltberger] 5 Wheat. [18 U. S.] 76, 93; [U. S. v. Pirates], Id. 200; Constable's Case, 5 Coke, 106. In relation to the statutes of the state of Massachusetts and of the United States, referred to on the other side, he said that it was evident that they were intended to indicate geographical, and not legal boundaries. They never were intended to fix the boundaries of the jurisdiction of the United States and the state courts. The admiralty jurisdiction of the courts of the United States was to be ascertained by legal principles and decisions establishing what were the high seas. He stated a case much stronger than the present, where the state tribunals had declined jurisdiction, a case in which he was the counsel for the defendant. According to the best of his recollection, these were the facts: A man of the name of Butler stole a watch on board the steam-boat from Nahant, when she was inside of Pudding Point Gut, and below Apple Island, clearly within Boston harbour. The case was submitted to Judge Dawes, the judge of the municipal court (than whom no man was better acquainted with the ancient and acknowledged limits of the jurisdiction of the criminal courts of the county of Suffolk), and the grand jury. No bill was found, and it was for the supposed want of jurisdiction, for the thief was caught in the act, taken in the mainour. If the United States tribunals had not jurisdiction, where the fauces terræ were five or six miles apart, and where witnesses on either side could not reasonably discern what was going on upon the other side, most offences committed on board of vessels in that vicinity must go unpunished; for it would be, in many cases, where a vessel was in motion at the time, impossible to ascertain whether she was within the boundaries of Essex, Norfolk, Plymouth, or Suffolk. Even in the case of Suffolk and Middlesex, separated only by Charles river, whose course, banks, and channel were known, it had been found necessary to provide by the Massachusetts Statute of 1794, c. 31, § 1, that the criminal jurisdiction of the two counties should be in common over the waters of that river.

As to the other point, Mr. Dunlap said he had drawn the indictment, and was responsible for all its errors, if there were any. The indictment is headed thus:

"*United States of America,*  
"*District of Massachusetts.*  

"At a Circuit Court," &c.

It was contended by the counsel for the prisoner, that there should have been after the word "Massachusetts" the letters "SS." Mr. Dunlap contended, that they were unnecessary in all cases, and would have been decidedly improper in this case. How these letters "SS." had been preserved since the reign of George the Second, in this country, was surprising. In that reign both abbreviations and Latin were prohibited in indictments, which were required to be in English. 1 Chit. Cr. Law, pp. 175, 176. That the "SS." the want of which was complained of, formed an abbreviation of two Latin words, and that this abbreviation was no longer to be found in the English indictments of the present day, though not uncommon in indictments in this country, especially in inferior tribunals, where the errors and the jargon of former times were implicitly copied and preserved. That the "SS." of the ancient indictments in England, and the "to wit" of many of the modern, were, it was believed, in all cases unnecessary. Chitty says, in his work (volume 1, p. 194), the county is stated in the margin thus: "Middlesex," or "Middlesex, to wit." In the form given by Lord Hale (2 Hale, P. C. 166) cited by Chitty (volume 1, p. 277), the "SS." or "to wit" were omitted, and the county was stated in the margin simply thus: "Norfolk." That in that standard book of precedents, the Crown Circuit Companion, a few of the precedents had the "to wit," but the greater portion did not have them, but had the name of the county, city, or district, without any prefix or addition. That the very first four forms given by Chitty, of commencements of indictments, did not contain the words "to wit" (2 Chit. Cr. Law, c. 1), and the sixth chapter of the same volume, heads all indictments for treason upon St. Edw. III., thus: "Middlesex." That in this case the "SS." was not only unnecessary, but its insertion would have been decidedly improper. Perhaps it would not have vitiated the indictment, but it would have been slovenly pleading. The heading of the indictment did not say simply "Massachusetts," in which case the "SS." might serve to signify and supply the omission of the words "District of," but the venue was put down, as every thing against a prisoner should be, so that he could understand it, in plain English, at full length—"District of Massachusetts." There was nothing then for the "SS." or "to wit" to operate upon or supply, and it would have

been an unmeaning, slovenly expletive. It was believed, that no established precedent could be produced from any book of authority, either in the darkness of past ages or the light of the present, where the venue in the margin of the indictment had the "SS." or "to wit" added, when the whole venue was written out, "County of Suffolk," "County of Middlesex," "City, Borough, and Town of Westminster, in the County of Middlesex," and the like. That the flourish at the head of the indictment,

"*United States of America,* }
　"*District of Massachusetts,*" }

was, in fact, no part of the indictment, and would be of no consequence, provided the subsequent language, commencing "At a circuit court of the United States for the first circuit, holden at Boston, within and for the district of Massachusetts," &c. &c. should be so explicit as to require no reference to the venue named in the margin. 1 Chit. Cr. Law, cc. 4, 7. That in relation to the allowance of nice, literal, mere formal exceptions, the observations of Lord Hale, Lord Mansfield, Lord Kenyon, Lord Ellenborough, and this court, were referred to. 1 Chit. Cr. Law, c 4. p. 170; 2 Hale, P. C. 193; 1 East, 314; 5 East, 160; 2 Maule & S. 386; 1 Leach, 383; U. S. v. Smith [Case No. 16,338]. That the allowance of exceptions of this nature carry us back into the dark ages, when lawcraft, like priestcraft, pressed like an incubus upon the common sense of the people, and when the common rules of life, to direct the conduct of men in their various relations to each other, which should be as plain as "the way to the parish church," were intricate and shadowed with, and darkened by mystery, affectation, and pedantry. That the cases referred to by the prisoner's counsel in Davis's Justice, and the fourth volume of Chitty's Criminal Law, were all cases of warrants from justices of the peace and Bow-street police court offices, where nicety in pleading was not required, and where absurd excrescences in forms lingered longer than any where else. But in most of these cases, where the "SS." was used, the venue was not set out in full. That the only case of an indictment, where the venue had been put down at length, and where the to wit had been added, which had been found, was the case in Russell & Ryan's Cases in Crown Law (179), and then it was not made a point in any way, and probably got in accidentally by slovenly pleading.

Before STORY, Circuit Justice, and DAVIS, District Judge.

STORY, Circuit Justice. It is agreed between the parties, that the place where the vessel, (the Pacific,) on board of which the offence was committed, lay at anchor at the time of the commission of the offence, was between Lovel's Island, George's Island, and Gallop's Island, which belong to the city of Boston, as part of its territorial limits. The tide ebbs and flows between these islands into what is called the inner harbour of Boston; and at all times of the tide there is a great depth of water there, the bottom or channel never being dry; and vessels at anchor there are constantly afloat in the stream. The distances between these islands is about one eighth of a mile. Hale's map of Boston, and Wadsworth's chart of the harbour of Boston and the adjacent coasts and headlands are admitted in evidence, as accurate delineations of the same. The nearest headlands on the main land on each side are the town of Hull on the southern, and Point Shirley on the northern side of the harbour of Boston, and the distance between these headlands is about five or six miles. There are a number of islands between these headlands, with narrow inlets and passages for vessels between them. The main channel into the inner harbour of Boston flows also between them, in no instance exceeding one mile in breadth. Nantasket Roads, as it is called, or the outer harbour of Boston, where vessels, going from and coming to the port, are accustomed to lie at safe anchorage, is on the side contiguous to Hull. There are several islands farther out towards the ocean; and particularly the Great Brewster, on which the principal lighthouse stands. The extreme point of the main land, jutting from the southern coast opposite to this light-house, is called Point Alderton, and the distance between them is about one mile and a quarter. Processes from the state courts of the county of Suffolk have been at all times, without objection, served as far down as where the Pacific lay; and even down to the light-house on the Great Brewster; but not below. Vessels are accustomed to anchor where the Pacific lay. The towns of Boston and Chelsea constitute the county of Suffolk. Such are the material facts.

The statute, on which the present indictment is founded (Act 1825, c. 276, § 22 [3 Story's Laws, 2006; 4 Stat. 121]) declares "that if any person or persons upon the high seas, or in any arm of the sea, or in any river, haven, creek, basin, or bay within the admiralty jurisdiction of the United States, and out of the jurisdiction of any particular state, on board any vessel, &c., shall with a dangerous weapon, or with intent to kill, &c. commit an assault on another such person shall on conviction thereof be punished," &c. There cannot, I think, be any doubt as to what is the true meaning of the words, "high seas," in this statute. Mr. Justice Blackstone, in his Commentaries (1 Comm. 110), uses the words "high sea" and "main sea" ("altum mare," or "le haut meer") as synonymous; and he adds, "that the main sea begins at the low water mark." But though this may be one sense of the terms, to distinguish the divided empire, which the admiralty possesses between high water and low water mark, when it is full sea, from that which the common law possesses, when it is ebb sea

(see, also, Constable's Case; 5 Coke, 106); yet the more common sense is, to express the open, uninclosed ocean, or that portion of the sea, which is without the fauces terræ on the sea coast, in contradistinction to that, which is surrounded, or inclosed between narrow headlands or promontories. Thus Lord Hale says (De Jure Maris, Harg. Tracts. c. 4. p. 10): "The sea is either that, which lies within the body of the county, or without. That arm or branch of the sea, which lies within the fauces terræ, where a man may reasonably discern between shore and shore, is, or at least may be, within the body of a county, and therefore within the jurisdiction of the sheriff or coronor;" and for this he cites Fitzh. Abr. Corone, 399; 8 Edw. II. And then he adds: "The part of the sea, which lies not within the body of a county, is called the main sea, or ocean." See Selden's Fortescue De Laud. Angliæ, c. 32, p. 67, etc., notes; and Hale de Port, pt. 2, c. 7; Harg. Law Tracts, p. 88; Vatt. bk. 1, c. 33. § 279 et seq.; The Twee Gebræders, 3 C. Rob. Adm. 336. In U. S. v. Wiltberger. 5 Wheat. [18 U. S.] 76, 94. Mr. Chief Justice Marshall, in delivering the opinion of the court, manifestly inclined to the same interpretation of the words "high seas," in our Penal Code. If (says he) "the words be taken according to the common understanding of mankind, if they be taken in their received and popular sense, the 'high seas,' if not in all instances confined to the ocean, which washes a coast, can never extend to a river about half a mile wide in the interior of a country." The other words descriptive of place in the present statute, give great additional weight to this suggestion; for if "high seas" meant to include other waters, why should the supplemental words, "arm of the sea, river, creek, bay," &c. have been used? Lord Hale, following the exact definition given in the Book of Assizes (22 Ass. 93) says: "That is called an arm of the sea, where the sea flows and reflows, and so far only as the sea flows and reflows." Harg. Law Tracts, pt. 1, c. 4, p. 12; Id. pt. 2, c. 7. p. 88; 1 Hale. P. C. c. 32, p. 424; 2 Hale, P. C. c. 3, pp. 13–16, 64; Com. Dig. "Navigation." B. Both he and Lord Coke constantly limit the "high seas" to those waters of the ocean. which are without the boundary of any county at the common law; and we shall presently see. that narrow arms of the sea are deemed to be within the boundary of some county of the realm. But the waters of the ocean upon the open sea-coast are admitted on all sides to be without limits of any county, and are within the exclusive jurisdiction of the admiralty up to high water mark, when the tide is full; and are deemed by the crown writers, generally, as the high sea or main sea. 2 Hale, P. C. 13–16, 54; 1 Hale, P. C. 424; 3 Inst. 57, 113; 2 East, P. C. 802; 1 Bac. Abr. "Coroner," B; 2 Bac. Abr. "Courts of Admiralty," A; Com. Dig. "Admiralty," E, 7, "Navigation," A.

From this view of the subject. I am entirely satisfied, as well upon the language of the authorities, as the descriptive words in the context, that the words "high seas" in this statute are used in contradistinction to arms of the sea, and bays, creeks, &c. within the narrow headlands of the coast, and comprehend only the open ocean, which washes the sea-coast, or is not included within the body of any county in any particular state. And upon the facts admitted in the present case, the place, where the offence was committed, is not the "high seas," in this sense of the terms. It is, in my judgment, "an arm of the sea," in the proper definition of that phrase. But an arm of the sea may include various subordinate descriptions of waters, where the tide ebbs and flows. It may be a river, harbour, creek, basin, or bay; and it is sometimes used to designate very extensive reaches of waters within the projecting capes or points of a country. My own opinion is, that arms of the sea, whether of the one description or the other, are within the admiralty and maritime jurisdiction of the United States. But if they are within the body of any county of a particular state, the state has also concurrent jurisdiction therein. See Rex v. Bruce. 2 Leach, 1093; Ryan & R. 243. I do not now go over the grounds of this opinion, having upon other occasions gone into them somewhat at large. But to bring a case within the purview of the present statute, it is not sufficient, that the place, where the offence is committed, is within the admiralty jurisdiction of the United States, whether it be an arm of the sea, creek, or bay, &c.; but it must, by the very words of the statute, also be a place "out of the jurisdiction of any particular state." And it is out of the jurisdiction of the state, in the sense of this statute, if it be not within the body of some county within the state.

This leads me to consider what is the proper boundary of counties bordering on the sea-coast, according to the established course of the common law; for to that I shall feel myself bound to conform on the present occasion, whatever might have been my doubts, if I were called to decide upon original principles. The general rule, as it is often laid down in the books, is, that such parts of rivers, arms, and creeks of the sea, are deemed to be within the bodies of counties, where persons can see from one side to the other. Lord Hale uses more guarded language, and says, in the passage already cited, that the arm or branch of the sea, which lies within the fauces terræ, where a man may reasonably discern between shore and shore, is, or at least may be, within the body of a county. Hawkins (P. C. bk. 2, c. 9, § 14) has expressed the rule in its true sense, and confines it to such parts of the sea, where a man standing on the one side may see what is done on the other. And this is precisely the doctrine, which is laid down by Stanton, J., in the passage in Fitzh. Abr. Corone, 399; 8 Edw. II.; on which Lord Coke and the common lawyers have laid so

much stress as furnishing conclusive authority in their favour. 4 Inst. 140, c. 22; Staunf. P. C. lib. 1, p. 51b; De Lovio v. Boit [Case No. 3,776]. It is there said: "It is no part of the sea, where one may see what is done on the one part of the water, and the other, as to see from one land to the other." And Mr. East. in his treatise on Common Law (2 East, P. C. c. 17, § 10, p. 804), manifestly considers this, as the better opinion.

In applying the law to the state of facts presented in the present case, I confess, that there does not seem to me any reason to doubt, that the place where the offence was committed was within the county of Suffolk. It is not necessary to decide, whether it be a bay, or haven, within the statute, though it might, perhaps, indifferently fall within each denomination, for it is a narrow arm of the sea, and also a place of safe anchorage for vessels. See Hale, De Port. Maris (Harg. Law Tracts) pt. 2, c. 2, p. 46; Com. Dig. "Navigation," B, C, D, E. It appears to me, that where there are islands enclosing a harbour, in the manner in which Boston harbour is enclosed, with such narrow straits between them, the whole of the waters must be considered as included within the body of the county. It is certain, that the islands themselves are within the county of Suffolk; and whether they are inhabited or not, can make no difference in the principles of law. Islands so situated must be considered as the opposite shores, in the sense of the common law, where persons, standing on one side, may see what is done on the other. There can be no doubt, from the proximity of Gallop's, Lovel's, and George's Islands to each other, that any person, on either of their shores, could see what was done on the other. I do not understand by this expression, that it is necessary, that the shores should be so near, that all that is done on one shore could be discerned, and testified to with certainty, by persons standing on the opposite shore; but that objects on the opposite shore might be reasonably discerned, that is, might be distinctly seen with the naked eye, and clearly distinguished from each other. Indeed, upon the evidence before me, I incline strongly to the opinion, that the limits of the county of Suffolk, in this direction, not only include the place in question, but all the waters down to a line running across from the light house on the Great Brewster to Point Alderton. In the sense of the common law, these seem to me the true fauces terræ, where the main ocean terminates.

Upon the whole, my opinion is, that the court, upon the facts, has no jurisdiction, and that a new trial ought to be granted. This renders it unnecessary to consider, whether the other point, made in arrest of judgment, can be maintained. I allude to the objection, that, in the caption of the indictment, after the usual beginning, "United States of America, District of Massachusetts," the letters "SS." are omitted. The point has, however,

been argued; and, as at present advised, it strikes me to be clearly not maintainable as a valid objection.

The district judge concurs in this opinion; and therefore a new trial must be granted. Notice must be given to the proper prosecuting officers of the state, that the prisoner may be dealt with according to law in the state courts.