Baker *v.* Hoag.

---

SAME TERM.　　*Before the same Justices.*

## BAKER *vs.* HOAG.

*It seems,* a lien for salvage can only be acquired as a reward for hazards incurred in rescuing property from the perils of storms and tempests upon the ocean; and that no such lien exists with regard to goods wrecked upon a navigable river, at a great distance from the main sea.

Waters within the ebb and flow of the tide are to be considered the sea.

Where a canal boat was found sunk in the channel of a navigable river, over one hundred miles from the ocean, and within the ebb and flow of the tide, where she had been sunk by collision, and was got ashore, with her cargo, by the plaintiff; *Held* that such boat was a *wreck*, within the meaning of the title of the revised statutes respecting wrecks; and that if the plaintiff had any lien, originally, upon the boat or cargo, for salvage, it ceased at the expiration of the forty-eight hours within which he was required, by the statute, to place the wrecked property in the hands of the proper officer.

*Held also*, that after the expiration of the forty-eight hours no one but the sheriff, or one of the coroners or wreckmasters, of the county, could hold possession of the wrecked property by virtue of any lien for salvage.

Baker *v.* Hoag.

THIS was an action of replevin, to recover 18 sacks of wool. The defendant pleaded property in himself. The cause came on for trial at the Greene circuit in September, 1847, before Justice WILLARD.

It appeared on the trial that the defendant was the owner of the wool in question; that it was on board the canal boat William Henry, on its way from Albany to New-York, in tow of a steamboat; and by collision the canal boat was sunk in the channel of the Hudson river, near the west shore, opposite to the four mile point between Athens and Coxsackie. The defendant had been where the boat sank, making efforts to find her, and had employed persons in that vicinity to fish for her and to inform him, or his agent Huxford, if the boat should be found. Two or three weeks afterwards Van Loon found the boat, and informed the plaintiff, who resided about three miles distant. The plaintiff immediately employed hands, cut the ice, and got the boat ashore and the cargo out. While the plaintiff was thus engaged, and before the boat was brought ashore, Huxford, the defendant's agent, went to the plaintiff and claimed to take charge of the wool, and offered to pay him the expense then incurred, which the plaintiff refused.

Afterwards, the defendant came there and offered to pay the plaintiff all reasonable charges, and asked the plaintiff for his bill, which the plaintiff said he had not then with him; but he agreed to get it and meet the defendant at Hudson. The defendant then took possession of the wool; the plaintiff forbidding it; and removed it to Hudson, where the parties met, but failed to agree on the amount the plaintiff should be paid. The defendant asked for a copy of the plaintiff's bill, which was refused. The plaintiff then brought replevin, and under the writ obtained possession of the wool. At the circuit, the judge directed a verdict for the plaintiff. There were several exceptions taken by the defendant at the trial; but it is unnecessary to state them, or the facts on which they depended, any further than the questions are decided by the court. The defendant made a bill of exceptions, and moved for a new trial.

Baker v. Hoag.

*K. Miller,* for the defendant.

*H. Hogeboom,* for the plaintiff.

*By the Court,* PARKER, J.   The canal boat containing the wool in question was found in the winter, by Nicholas Van Loon, in the Hudson, a navigable river, and over one hundred miles from the ocean.   She was lying within the ebb and flow of the tide, and the centre part of her deck only was above water.   After the collision, by which she was sunk, she must have been moved by the current, or the tide, until she made her appearance as above described.   Van Loon informed the plaintiff of his discovery, who immediately proceeded to cut a passage through the ice, and with the aid of others whom he employed and paid, got the boat ashore.

The first and most important question to be determined is whether at common law the plaintiff had any lien on the wool for salvage.

In *Cross on Lien,* 25, the rule is laid down as giving a lien only to those " who, at the risk of their personal safety, effect the recovery of property, or ships, at sea.   The mere finding of a wreck, where no danger or risk is incurred, or the recovery of lost property on land, are not however, within the grounds within which this right has been allowed in case of salvage at sea."   This doctrine is sustained by the authorities.   (*Hartford v. Jones,* 2 *Salk.* 654.)   This case is more fully reported in 1 *Ld. Raym.* 393.   (*See also Hamilton v. Davis,* 5 *Burr.* 2732; *Baring v. Day,* 8 *East,* 57 ; *Sutton v. Buck,* 2 *Taunt.* 301 ; *Whitaker on Lien,* 24.)   *Holmes v. Hard,* (*Harper's S. C. Rep.* 133,) is in point.   In that case a canal boat was found wrecked, and the finder took it to a place of safety and repaired it ; but it was held that he thereby acquired no lien for salvage, and an action of trover was sustained against him by the owner, without payment for his trouble and expenses.

The taking care of goods left by the tide upon the banks of a navigable river, communicating with the sea, gives no lien for salvage.   In *Nicholson v. Chapman,* (2 *Henry Black.* 254,)

Baker *v.* Hoag.

a quantity of timber placed in a dock on the bank of a navigable river, being accidentally loosened, had been carried by the tide to a considerable distance, and left, at low water, upon a towing path. A., finding it in that situation, voluntarily conveyed it to a place of safety beyond the reach of the tide at high water. It was held that A. had no lien on the timber for the trouble and expense in the carriage of it, but was liable to an action of trover for not delivering it up to the owner on demand; though nothing was tendered him by the owner by way of compensation. But the court intimated an opinion that A. might maintain an action against the owner, for a compensation.

In this case, the boat, when brought ashore, was in no imminent danger, nor did the plaintiff incur any hazard in what he did. The property was not *derelict*. The master and crew had not left it without the intention of returning to it. On the contrary, the owner had been engaged in searching for the property, and had employed persons living in the vicinity to fish for it, and to notify him if it should be found. It was the ordinary case of the finding of property; and I think it was not under such circumstances as gave the plaintiff any lien on it. (2 *Kent's Com.* 635.) A lien on property found can only be maintained where a reward has been offered for it. ( *Wentworth* v. *Day*, 3 *Met.* 352.)

Did the transaction occur *at sea ?* Waters within the ebb and flow of the tide are to be considered *the sea*. Such is the legal but not the common signification. (*Bouv. Law Dic.* Gilpin's Rep. 526. *Angell on Tide Waters*, 44 *to* 49. *In re Jefferson*, 10 *Wheat.* 428.) Yet it was not on the "*main sea*," or the "high seas." That part of the sea which is not within the body of a county is considered as the *main sea*, or *ocean ;* and such is the interpretation of the words "*high seas*" in the penal code of the United States. (*Angell on Tide Waters*, 4. *United States* v. *Millberger*, 5 *Wheat.* 76.) The general rule is that such parts of rivers, arms, and creeks of the sea are deemed to be within the bodies of counties, where persons can see from one side to the other. ( *United States* v.

---

Baker *v.* Hoag.

---

*Gursh,* 5 *Mason,* 290.    *Hamilton* v. *Frazer, Stuart's Canada Rep.* 27.   1 *Bacon,* 623.)

Though the transaction in question occurred at sea, as thus defined, and within admiralty jurisdiction, (*Gilpin's Rep.* 526,) yet it happened within the limits of the county of Greene, and not upon the "*high seas*." The case of *Nicholson* v. *Chapman,* and the other authorities above referred to, certainly go far to establish the doctrine that a *lien* for salvage can only be acquired as a reward for hazards incurred in rescuing property from the perils of storms and tempests upon the ocean, where

> "Una Eurusque Notusque ruunt, creber procellis
>   Africus, et vastos volvunt ad litora fluctus;"

and that no such *lien* exists with regard to goods wrecked upon a navigable river, at a great distance from the main sea. There is certainly good reason for the common law rule, which makes the security for the reward depend upon the extent of danger to which the party is exposed in performing the service. We are not, however, without some statutory regulations on this subject. The provisions of the title of the revised statutes respecting "wrecks," (1 *R. S.* 690,) are fully applicable to the case we are considering. They give to the owner the right to recover all wrecked property "upon payment of a reasonable salvage and necessary expenses." It is made the duty of the sheriff, coroner, and wreckmasters of every county "in which any wrecked property shall be found, when no owner or other person entitled to the possession of such property shall appear," to take possession of it, and to keep it safely to answer the claims of such persons as may thereafter appear entitled thereto. By the 25th section, every person taking possession of any wrecked property is required to deliver it to the sheriff, or one of the coroners or wreckmasters of the county where the same shall be found, within forty-eight hours after the same shall have been taken by him, or have come to his possession ; and a failure to comply with this requirement subjects the offender to a forfeiture of treble the value of the property, to the owner, and to fine and imprisonment for a misdemeanor.

Baker *v.* Hoag.

The lien on the property, for salvage and expenses, is by the 12th section, given only to the officer to whom the property is thus delivered; who is authorized to detain it till such salvage and expenses shall be paid.

The property in question was clearly a wreck, within the meaning of this act. It was found within the limits of a county, and within the jurisdiction of the state. It was the duty of the plaintiff to deliver it immediately to the sheriff, or one of the coroners or wreckmasters of the county of Greene, who alone had the right to detain it for the benefit of both salvors and owner. The statute points out the mode in which the amount of salvage and expenses shall be ascertained, and thus regulates, justly and amicably, the very point that was in difference between these parties before the suit was commenced.

The plaintiff, then, had no lien at the commencement of this suit. If he obtained one by salvage, it ceased at the expiration of the forty-eight hours within which he was required to place the property in the custody of the officer. No one but the officer could hold possession by virtue of such lien, after that time. We are not entirely without precedent and authority in the construction of this statute. Similar acts, modifying the provisions of the common law, have long been in force in England. (*See Whitaker on Lien,* 22, *and note, and cases there cited.*) The plaintiff, however, may not be remediless. Unless he has forfeited his claim by his neglect to comply with the statute, he may look to the defendant personally, for compensation. (2 *H. Black.* 254. *Harper,* 133. 1 *Sumner,* 207. *Id.* 328. *Ware,* 332. *Id.* 41. *Id.* 477.)

It is unnecessary to examine the other questions presented by the bill of exceptions. There must be a new trial, costs to abide the event.