## W. S. ESKRIDGE *v.* MARIA McGRUDER et al.

1. CONSTRUCTION OF STATUTE, ACT OF 9TH FEBRUARY, 1860, BY WHICH PART OF THE TERRITORY OF TALLAHATCHIE COUNTY WAS TRANSFERRED TO SUN-FLOWER.— The act of the legislature of 9th February, 1860, by which a portion of Tallahatchie county was transferred to and made part of Sunflower county, did not deprive the sheriff and tax collector of Tallahatchie county of the right to sell land embraced in this transfer, for the non-payment of the levee taxes of 1859, due by the act of 2d December, 1858, and a sale made of such land by the sheriff of Tallahatchie county, on the 9th April, 1860, was valid, and his deed conferred title on the purchaser.

2. SAME — STATUTES IN PARI MATERIA. — It is a rule upon this subject that all statutes which relate to the same subject must be taken as one system and construed consistently. The act of 1860 does not refer to that of 1858, and those statutes can be " construed consistently," by holding them to be "one system," and that the collection and distribution of the levee tax of 1859 was not changed by the transfer act of 1860.

APPEAL from the chancery court of Sunflower county. GIFFORD, J.

The following are the errors assigned :

1. The court erred in sustaining the plea to the bill of complaint.

2. The court erred in dismissing the bill of appellant.

*W. S. Eskridge,* in proper person.

The only question involved is, did the tax collector of Tallahatchie county, on the 9th April, 1860, have power under the Act of December 2, 1858, to sell the land in question, for delinquent taxes for the year 1859. To determine this involves the proper construction of the acts of 1858 and of 1860, p. 535. It is conceded that, by the act of February 9, 1860, the land had become part of Sunflower county before the sale on the 9th of April, 1860. We think the sale could only be properly made by the tax collector of Tallahatchie county. See Acts of February 9, 1860, p. 535. It is clear that the levee tax of 1859 had been levied and assessed, and they were delinquent for non-payment before the 9th February, 1860. See sec. 1 of Levee Law, p. 33.

The legislature intended to embrace the levee tax, for that

had accrued and been assessed to all intents, as had the state taxes ; and certainly the levee taxes must be included as is all other taxes in the broad and general expressions used.   And when the legislature directed the tax collector of Tallahatchie county to pay over the taxes collected by him to the state and county treasury, it only intended to direct the payment of taxes accrued, to the person designated by law to receive them ; and by intendment the collector is directed to pay the levee taxes to the treasurer of the board of levee commissioners.

The levee tax on lands annexed to Sunflower county had, by operation of the first section of the levee law, been levied thereon for the year 1859, as a portion of Tallahatchie, and by the same act it was made the duty of the sheriff of that county to collect the tax so levied.   And for the performance of this duty he had been required to give bond under said act.   This duty, having by law attached to said office, he could not be relieved from its performance except by express provision or plain implication of law.   When by law a duty once attaches to a public officer, he cannot be relieved from its performance except by a subsequent act of the legislature.

It is submitted that when, in the sixth section of the levee act, the sheriff of the county in which the land is situated, is directed to sell the same on the 2d Monday in April of each year, the legislature contemplated this duty to be performed by the sheriff of the different counties in the levee district, as the counties were then organized.   As to the deed being in the name of John A. Hall, tax collector, instead of as sheriff, see Boon v. Bowers, 30 Miss. 246 ; Moore v. Foote, 32 ib. 469.

*J. Z. George,* on same side.

Had the sheriff of Tallahatchie county the power to sell the lands situated in the annexed district, which were delinquent for the levee taxes of the years 1859 and 1860 ?   The second section of the annexation act provides, that " the

taxes which have already accrued and been assessed shall
be collected and paid into the state and county treasury by
the tax collector of Tallahatchie, as is now provided by
law." But it is alleged that this provision does not extend
to levee taxes, which are not paid into the state and county
treasury, but into the levee treasury. In construing stat-
utes we are not to adhere literally to the words, but we are
to look at the mischief and the remedy, and extend the lat-
ter so as to suppress the former, and to bring within the
operation of the latter all cases manifestly within the spirit
and meaning of the act. The legislature did not intend to
make a different rule for two cases exactly alike, and within
the same mischief; and the courts favor that construction
which places cases strictly analogous within the same rule.
The whole spirit of the law, statutory and unwritten, is to
bring all cases, liable to the same mischief, within the same
remedy, and to make the rule uniform and equal in all
cases.

As to the general revenue law in force in February, 1860
(Rev. Code, art. 26, p. 77, art. 33, p. 79), the words in the
second section "taxes which have already accrued and
been assessed," so far as relates to state and county taxes
for 1859 and 1860, manifestly meant those which, having
been legally levied and assessed, were due and payable and
collectible for that fiscal year, and not such as were, by the
default of the tax payer, then liable to be distrained for.
If this latter were the true construction, the collector of
Tallahatchie could not, after the first Monday in March,
1860, have collected any taxes on the personal or real prop-
erty in that district for that year. If this power to collect
taxes were not reserved to the sheriff of Tallahatchie
county, it would result that the sheriff of Sunflower county
would have been without the means or power of collecting,
and none could have been made, except voluntarily. And,
if he, the sheriff of Sunflower, had had copies of the assess-
ment roll, he could not have known who had, and who had
not paid, prior to 1st March, 1860.

Was this levee tax, first, within the description "accrued and assessed?" second, within the mischief and remedy? The levee tax was assessed; it had accrued in the sense that state and county taxes had accrued; it was collected by the sheriff at the time of annexation. The levee tax was payable annually on the 1st day of April. At the passage of the annexation act, the levee tax was first "assessed and accrued" within the meaning of the second section of that act. It is embraced in the terms used in the second section, "the taxes which have accrued and been assessed." Grammatically, this is the meaning, just as clearly as if the word "all" had been used. The terms employed embrace the levee as well as the taxes of state and county.

*Mayes & Keyes*, for appellees.

The constitution provides that the property of private citizens shall not be taken from the owner, "except by due course of law." Such statutes being derogatory of private property are to be strictly construed. American courts hold that statutes for the collection of taxes by sale of property should be complied with strictly in all their requirements; else no title passes by the sale. Blackf. on Tax Titles, 60, 65, 83, 90 and 166; 4 Pet. 349; Hopkins v. Sandidge, 31 Miss. 678; 33 ib. 451, 452; 26 Miss. 187. Under this rule it is insisted that the action of the court was correct in sustaining the plea of defendants. The levee act of 2d December, 1858, falls within that class of statutes "derogatory of private property, and conferring new and extraordinary powers." The taxes are due on the 1st day of April of each year, and, if not paid, the sheriff is authorized, without further notice, to sell and convey, on the second Monday of April, and to execute a deed to the purchaser, which shall vest a full and complete title, etc., and shall be evidence that the title of all persons is "vested in the purchaser," and shall be *prima facie* evidence that the land was subjected to the tax, etc. In all respects it is in derogation of the principles of the common law, and

operates harshly and frequently with great injustice to private rights.

To make the deed *prima facie* evidence, etc., it must be executed by the sheriff of the county in which land is situated. Sec. 6. But the deed relied on upon its face shows that the sale was made and the deed executed by the "tax collector of Tallahatchie county." But had the lands been situated in Tallahatchie county, where is the authority given a "tax collector" to sell and convey lands delinquent for taxes? The offices of sheriff and tax collector are separate and distinct, and so recognized by the high court of errors and appeals, in Moore v. Foote, 32 Miss. 469.

By the act that part of Tallahatchie county in which these lands lie was transferred to Sunflower. Its date was 9th of February, the sale and deed were made the 9th of April thereafter. By section 2, "the taxes which have already accrued, and been assessed, shall be collected and paid into the state and county treasury by the collector of Tallahatchie county, as now provided by law." This section does not embrace the taxes levied by law as levee taxes; because, 1st. The levee taxes of 1859 had not "already accrued" at the date of the passage of the act; 2d. The levee taxes were not to be collected by the tax collector "and paid into the state and county treasury, as is now provided by law;" 3d. "Tax collector" is an officer not mentioned as clothed with any powers in the levee law, nor any provision that the levee taxes are to be paid into the state and county treasury. Section 2 of the act of February, 1860, directs the tax collector to collect only such taxes as are "to be paid into the state and county treasury, as is now provided by law;" it cannot embrace the levee taxes. State and county taxes depend on value fixed by the assessor; the levee taxes is uniform upon area and not on value, ten cents per acre; and there is no law providing that the levee taxes shall be paid into either the state or county treasury. The act of February 9th, 1860, omitted entirely all mention of the levee taxes and of the officer authorized by law to col-

lect them; and the maxim, *expressio unius est exclusio alterius*, was never more applicable to the interpretation of a statute than here.  9 Johns. (N. Y.) 349.  And see, also, Hampshire v. Franklin, 16 Mass. 86; 4 ib. 384 and 589; 1 Greenl. on Ev., § 6, p. 8; Alcorn v. Hamer, 38 Miss. 652.

*George L. Potter*, on same side.

No officer of Tallahatchie had power to sell these lands for "levee taxes" after they became part of Sunflower county; unless authority was reserved in the annexation act of 1860; otherwise, the fact of the transfer would be conclusive against all claims by any officer of Tallahatchie to sell them.  We look in vain to the second section of the act for any such reservation.  The only reservation there is as to "the taxes which have already accrued and been assessed; they were to be collected by the collector of Tallahatchie and paid into the state and county treasury, as now provided by law."  The lands became a part of Sunflower county two months before the sale in this case.  This reservation is limited to such taxes as were to be paid into the state and county treasury, and not to levee taxes which were to be paid to the treasurer of the board of levee commissioners.  Acts 1858, p. 34, 35, § 2.  Other parts of this second section are equally conclusive on this point.  The reservation is limited "to the taxes that were past due, on the 9th February, 1860."  The words "the taxes which have already accrued" also clearly limit this power to the collection of the state and county taxes then past due, and exclude the idea that the reservation included the levee taxes, which were payable on or before the 1st April in each and every year.  Acts 1858, p. 33, sec. 1.

The county of Tallahatchie had a lien on the land for the county taxes "already accrued"; the land owner was its debtor to that amount, and it was proper to reserve power to the tax collector of that county to collect the county tax. The Code provided that the state and county taxes should

be collected at the same time, and by the same collector. The act of 1858 levied and assessed the taxes for the whole five years, and there was no other assessment for levee purposes. We have used the word "accrued." as the word "due," and if this is not right, then the collector of Tallahatchie would collect the levee taxes on the Sunflower land for the whole five years.

TARBELL, J.:

By an act of the legislature approved December 2, 1858, it was enacted by section 1, "that there be and is hereby levied and assessed, a uniform tax of ten cents an acre per annum," for the period of five years, on lands described in the act, and particularly upon the lands hereinafter mentioned. This tax was made payable annually, "on or before the 1st day of April in each year, from the 1st day of April 1859, to the 1st day of April, 1863, inclusive."

By section 2, it was made the duty of the respective "sheriffs" of the several counties named "to collect said tax" thereby "assessed within their respective counties, within the time prescribed" in the act, "that is to say, the first amount due on or before the first day of April, 1859, and annually thereafter until the whole shall be paid." The sheriffs "of the counties of De Soto, Panola, Tallahatchie, Sunflower and Yazoo" were required "to pay the tax collected in their respective counties to the treasurer of the board of levee commissioners," etc.

Section 4 directs the bonds of the "sheriffs" and their amounts. Section 5 prescribes the same proceedings, and damages for failure to collect and pay over, as in case of failure to collect and pay over state and county taxes.

Section 6 enacts, "That the tax hereinbefore levied or assessed shall be a lien on the lands within said district, and should any owner or owners of any lands, or persons interested in the same, fail to pay the taxes hereinbefore levied and assessed, at or before the time when the same may become due, it shall be the duty of the sheriff of the county

in which said delinquent land may be situated without further notice, on the second Monday of April in each and every year after the said tax may become due, to sell at the court-house door of his proper county, the land in default, or so much thereof as may be sufficient to pay the tax required and all costs, to the highest bidder for cash, and, when sold, to execute a deed therefor to the purchaser, which deed shall vest in said purchaser a full and complete fee simple to the land so sold, and said deed shall be taken and received in any court of justice as vesting a perfect title in the purchaser, and shall be evidence that the title of the owner or owners, as well as the claim of all persons interested therein, is thenceforth vested in the purchaser, and shall be *prima facie* evidence that the land was subject to the tax for the non-payment of which the same was sold, and that all the pre-requisites of said sale had been complied with," etc.

Section 30 directs the act in pamphlet form to be sent to the sheriffs of the several counties interested.

By an act approved February 9, and taking effect March 1, 1860, that portion of the county of Tallahatchie in which is situated the lands in controversy was detached from Tallahatchie, and annexed to the county of Sunflower.

Section 2 of the act last named directs, "That the taxes which have already accrued, and been assessed, shall be collected and paid into the state and county treasury, by the tax collector of Tallahatchie county as is now provided by law."

Section 3 provides, "That the board of police of Sunflower county shall procure from the records of Tallahatchie county, copies of all deeds, judgments, and other matters of record relating in any manner to the portion of Tallahatchie county, hereby transferred and annexed, or to the inhabitants thereof and shall cause the same to be duly recorded in Sunflower county."

Section 4 declares, "That no suit or suits already instituted shall be abated, dismissed, or in anywise affected in

consequence of the change of the county boundaries made by this act." On the 9th day of April, 1860, Wm. S. Eskridge, bought at a public sale for levee taxés for 1859, made by the sheriff of Tallahatchie county, tax collector for that county, certain lands included in that portion of the county of Tallahatchie detached therefrom, and annexed to the county of Sunflower under the law of February 9, 1860. On the 4th day of February, 1868, Eskridge filed his bill under the act of February 10, 1860, in the chancery court of Sunflower county to perfect his title to the lands he had purchased as aforesaid. The bill is against Maria McGruder and others, and charges that on the said 9th day of April, 1860, the sheriff of Tallahatchie county sold according to law, for the levee taxes due therein for the year 1859, the lands therein described, the complainant becoming the purchaser thereof for the sum of $48 31. A copy of the tax-collector's deed is made an exhibit. At the expiration of two years, the lands remaining unredeemed, the deed was duly recorded in the proper office. The complainant states that he is in possession of those lands by a tenant, but that the defendants named claim to have title to the same lands and threaten to disturb the possession of the complainant, whereby a cloud is cast upon his title, and therefore he files his bill to remove that suspicion or cloud.

The defendants pleaded the sale of the lands described by the tax collector of Tallahatchie, when in fact they were situated in Sunflower county, insisting that the sale was therefore void. This plea was sustained and the bill dismissed. From that decree the complainant appeals to this court, and assigns for error the action of the court below in sustaining the plea and in dismissing the bill.

The solution of this case depends upon the construction which shall be given to the statutes quoted.

The act transferring a portion of the county of Tallahatchie to the county of Sunflower was with a full knowledge of the law of 1858, by which the levee tax was assessed. The bonds

of the tax collectors or sheriffs were executed and their sureties assumed responsibilities with reference to the circumstances existing at the time, and not to the change made by the law creating new county boundaries.   The latter statute went into operation on the first Monday of March, 1860, and the sale of lands for delinquent levee taxes was on the second Monday of April thereafter.   If it is assumed that the collection of levee taxes in that portion of Tallahatchie transferred to Sunflower devolved upon the sheriff of the latter, then the collection must necessarily have been suspended, until, by obtaining the requisite information, their collection could be proceeded with intelligently, properly and legally.   It can hardly be presumed that the legislature intended a suspension of the collection of the levee tax, and the consequent uncertainty, confusion and inconvenience to the people, and the necessarily injurious effect upon the public interests.   It would be preposterous to suppose the legislature purposely omitted from section 2 of the act of transfer a direction as to the levee tax, in order to give a pecuniary benefit to the sheriff of Sunflower, which is the only conceivable motive of an intentional omission.

The more just presumption is, that the legislature did not intend, in the change of county boundaries, to interfere with the collection and distribution of the levee taxes as presented by the law of 1858, as to the tax of 1859.   Did the law transferring a portion of Tallahatchie to Sunflower, confer upon the tax collector of the latter the duty of collecting the levee taxes in the transferred district?   Section two of the act of February 9, 1860, directs "the taxes which have already accrued, and been assessed, to be collected and paid into the state and county treasury by the sheriff of the county of Tallahatchie, as provided by law."   So far as the county taxes were concerned, this was a simple act of justice to the people of the last-named county; but, as to the state taxes, there was no more occasion for any direction than as to the levee taxes.   Indeed, the interruption, uncertainty and confusion likely to follow the want of

direction, would apply with equal force both to the levee and the state taxes. It would be unjust and invidious to suppose the legislature of 1859 and 1860 to have been unmindful of so important a matter as the levee taxes, and of the people affected thereby. The most natural and reasonable conclusion, to our mind is, that the legislature supposed the levee tax of 1859 wholly unaffected by the transfer; or, that the absence of express direction to pay the levee tax over to the proper treasurer in section two of the law of 1860, was an accidental omission — "an error of carelessness" in legislation.

We adopt the latter theory as the most probable interpretation of the legislation connected with the statutes under consideration, and this brings us directly to the question involved, viz. : Was the sheriff of Tallahatchie warranted in selling, on the second Monday of April, 1860, lands in the district transferred to Sunflower, upon which the levee tax of 1869 had not been paid? The statute of 1858, which assessed the levee tax, directs this tax to be collected by the sheriffs of the respective counties wherein the lands are situated, having in view, of course, county boundaries as then existing. In 1860, by an act of the legislature, which took effect on the first of March of that year, a portion of the territory of Tallahatchie was transferred to the county of Sunflower. The sale of real estate for delinquent levee taxes was required to take place on the second Monday in April, so that from the transfer to the sale there were less than six weeks time, with leave to tax payers to make voluntary payments to the first day of April. Hence, if the sale devolved upon the sheriff of Sunflower, he had only from the first day of March to the ninth day of April within which to obtain from the sheriff of Tallahatchie the necessary information or data to enable him to conduct the sale legally. This involved the suspension. of the reception and collection of taxes for a time at the most critical period of their collection, and their payment by the transferred people at an unusual place. The statute

properly directed the collection and payment of the state and county taxes in their usual channels.   Is it not most probable that the legislature accidentally overlooked the levee taxes, or supposed the tax of 1859 unaffected by the change of county lines?   Ch. J. Marshall, in Fisher v. Blight, 2 Cranch, 386, says, "When great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the legislature be plain, in which case it must be obeyed."   It must be conceded that great "inconvenience" would have accrued to the public interests by the necessary suspension of the collection of the tax, and the consequent uncertainty and confusion in the minds of the people from a contrary construction of these statutes at the time, by the officials, and that worse results would doubtless follow such a construction now.   Lord Mansfield held as a rule upon this subject, "that all statutes which relate to the same subject, notwithstanding some of them may be expressed, or are not referred to, must be taken to be one system and construed consistently."   The act of 1860 does not refer to that of 1858, and those statutes can be "construed consistently" only by holding them to be "one system," and that the collection and distribution of the levee tax for 1859 was not changed by the transfer act of 1860.

The spirit of an observation of the learned judge, Chief Justice Holt, in Sir Wm. Moore's case (Ld. Raym. 1028), "If a thing contained in a subsequent statute be within the reason of a former statute, it shall be taken to be within the meaning of that statute," sustains the conclusion that a direction to the sheriff of Tallahatchie, to collect and pay the levee tax of 1859, was within the meaning of section 2, of the law of 1860.   The declaration of Chief Justice Holt has been repeated in numerous cases and in a variety of forms of expression, thus: "Statutes must be expounded according to their meaning, and not according to the letter." Billow v. Beshnell, 5 Barb. 156 ; People v. N. Y. C. R. R. Co., 13 N. Y. 78.   "A thing within the intention is within the

statute, though not within the letter, and a thing within the
letter is not within the statute, unless within the intention."
People v. Utica Ins. Co., 15 Johns. 358 ; Dresser v. Brooks, 3
Barb. 429.    The rule so variously expressed is venerable for
its age, and is thus repeated in People v. The Utica Ins. Co.,
15 Johns. 358 : "A thing within the intention, is as much with-
in the statute as if it were within the letter, and a thing within
the letter is not within the statute if contrary to the intention
of it."    This rule is more briefly expressed in Griswold v.
National Ins. Co., 3 Cow. 89 ; Crocker v. Crane, 21 Wend.
21, etc.: "In construing a statute, the intention of the legis-
lature should be followed wherever it can be discovered,
although the construction seems contrary to the letter of the
statute."    The construction we give these statutes is "con-
trary to the letter" thereof, but it would discredit the law-
makers to suppose they intended to interrupt the collection
of the levee tax in the short space of time allowed, from the
1st of March, when the transfer took effect, and the 9th of
April when the sale would occur, to obtain copies of maps,
assessment rolls, etc., and re-arrange the sheriff's bonds, in
order that the sheriff of Sunflower might complete the col-
lection in the territory annexed thereto.    It is more agree-
able to suppose they intended the levee law to remain in
force for the collection of the tax of 1859 to its consummation
by sale, and that section 2 of the laws of 1860, in effect, so di-
rects, embracing the principle of "equitable construction,"
sometimes entertained by the courts, as well as the rule so
often repeated.    In the case of Donaldson v. Wood, 22 Wend.
395, it was said, "A construction which is contrary to
natural justice and equity, or which will be necessarily pro-
ductive of practical inconvenience to the community is to
be rejected, unless the language of the lawgiver is so plain
as not to admit of a different construction."    That the con-
struction of these statutes, according to their strict letter,
would have resulted in "practical inconvenience to the
community" interested, and to the officials, and that such
a construction would have been "contrary to natural justice

and equity," appear to be irresistible conclusions from the facts and circumstances of this case.

A statute of New York empowering certain officers to contract with the publishers of some newspaper to publish the legal notices of the state, though it did not authorize, in terms, new contracts on the expiration of the first, was construed in Weed v. Tucker, 19 N. Y. 422, as authorizing such further contracts. The basis of the decision was that the statute was remedial, and to be liberally construed. With much greater force did the public interest, the convenience, and good will of the people concerned demand the construction of these statutes, which was adopted at the time.

The rule so often mentioned is illustrated by numerous English cases, one of which will suffice for our present purpose. The 13 Eliz. ch. 10, being enlarged by the 14 Eliz. ch. 11, although only the former of these statutes was recited in 18 Eliz. ch. 11, yet, it was held that the latter was virtually recited therein. Bayley v. Murin, 1 Vent. 246 ; Bac. Abr., title Statute. In the presence of that determination we are far within accredited authority in holding that, as to the levee tax of 1859, it was undisturbed by the law of 1860, or that the collection and distribution of payment according to the law of 1858 was virtually continued as to the transferred territory, to the completion of the collection of the tax of 1859 by sale, if necessary.

Hobart, when asked by what rule the judges guided themselves in the exposition of statutes, answered that "it was by that liberty and authority that judges have over laws, especially over statute laws, according to reason and best convenience to mould them to the truest and best use." Bacon, adopting the language of Hobart, educes a like rule : "The power of construing a statute is in the judges, who have authority over all laws, and more especially over statutes, to mould them according to reason and convenience to the best and truest use." It has been declared that there are, in all cases of judicial interpretation of statutes, two great heads of investigation : 1st. The object to be attained ;

2d. The means to be employed. The first involves an inquiry into the intention of the legislature, and the second, the facts within and without the statute to be inquired into to ascertain the intent of the doubtful phraseology. Most statutes are referable to certain classifications, and as to each class there are established rules in aid of their interpretation; as, statutes conflicting with a constitution or with a fundamental law, statutes in derogation of the common law, statutes prescribing forms of procedure, or modes of proof, penal statutes, remedial statutes, statutes authorizing summary judicial proceedings, and the like; but the statutes under consideration can scarcely be classed under any of these heads. They are perhaps more nearly allied to remedial statutes, in this, that the change of county boundaries was doubtless intended for the public good, the convenience of the people, and the promotion of the welfare of the community interested. Hence, the legislature could never have contemplated any inconvenience, in connection with the levee tax, as the result of the change of territory. No "mischiefs" are alleged as connected with the collection of this tax which the transfer was designed to remedy, and so, the presumption is evident, that the legislature did not intend to create them by the act of transfer, which would have been inevitable by holding that the collection of the levee tax of 1859 in the transferred district was conferred upon the sheriff of Sunflower county.

Where a statute of New York declared that if a corporation did not organize and commence its business within a year from the time of the passage of the charter it should become void, a company, formed under the statute, did not organize or commence its business within the year; but within that time, and eighteen days before its expiration, an act was passed amending the charter, continuing the directors in office for a year, and authorizing the stock subscription books to be again opened. It was held that a fair construction of the amendatory act was to give the company one year from the time of its passage for its organization and the

commencement of its business, on the ground that it was wholly improbable that the legislature expected or intended that the company should complete its organization and commence its business within the short space of eighteen days. Johnson v. Bush, 3 Barb. 207, 238. So, in the case at bar, "it is wholly improbable that the legislature expected or intended," that the collection of the levee taxes in the transferred district, should be also transferred "in the short space" of time allowed from the 1st of March to the 9th of April.

We have referred to the leading inquiries in all cases of judicial construction of statutes, namely: the object of the enactment and the intention of the law-maker, and the means of ascertaining that intention, as to which Blackstone says: "The fairest and most rational method to interpret the will of the legislator is by exploring his intentions at the time the law was made, by signs the most natural and probable. And these signs are either the words, the context, the subject-matter, the effects and consequences, or the spirit and reason of the law." "It is a sound principle," by the court in Tounele v. Hall, 4 Comst. 140, "that such a construction ought to be put upon a statute as may best answer the intention which the makers had in view ; and that is sometimes to be collected from the cause or necessity of making it, at other times from other circumstances." We are not aware of the "cause or necessity" of the transfer of a portion of the territory of Tallahatchie to Sunflower. If there were "mischiefs to be suppressed" and "remedies to be advanced," we are not informed of them, and, indeed, we suppose this law is not one to be tested by these rules. Hence, we must look for the intention of the legislature in "other circumstances," in the "effects and consequences," or the "spirit and reason" of the transfer, "according to the true intent of the makers of the act, *pro bono publico.*" Heydon's case, 3 Rep. 7. But we need not multiply precedents, which are without number, nor rules which have for a long time

guided the courts. The subject occupies a large space in the text-books and reports, and is at all times full of difficulties and perplexities. The American courts have pursued a much more restricted and conservative line of decision than the English, which at the first were fairly chargeable with a usurpation of the duties of legislation. With us, no principle is more firmly established than the rule, that when a law is plain and unambiguous, the legislature shall be intended to mean what they have plainly expressed, and consequently no room is left for construction. The intention of the legislature is to control absolutely. When that intention is clearly ascertained, the courts have no other duty than to execute the legislative will. It is only in cases where the intention of the legislature is ambiguous that the power of construing a statute exists in this country. Referring again to the statutes under consideration, we quote briefly, in the light of the foregoing, viz.: Section 6 of the act of 1858, treats the levee tax as "levied or assessed" by the act, and provides that any person failing to pay the taxes thereinbefore "levied and assessed," the lands of such person shall be sold, etc. Indeed section 1 enacts that the tax "be and is hereby levied and assessed." Section 2 of the act of 1860, directs that the "taxes which have already accrued and been assessed," shall be collected and paid over to the state and county treasury, "as is now provided by law." The levee tax had "accrued and been assessed," and its disposition was "provided" for by the "law" which levied and "assessed" it. Was that disposition changed by the act of transfer? In the light of the rules and adjudications in such cases, and of the facts of this, we are clearly of the opinion that a direction to the sheriff of Tallahatchie to observe the levee law of 1858, for the collection and payment of the levee taxes of 1859, in the transferred district, was virtually contained in section 2 of the act of transfer, and we are conducted to this result by all the authorities, by every rule and adjudication, and from the

various points of view by which we are able to test this case.

Kent gives this expressive rule upon the subject before us: "In the exposition of a statute, the intention of the law maker, when ascertained, will prevail over the literal sense of the terms; and its reason and intention will prevail over the strict letter. When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt and the remedy in view; and the intention is to be taken or presumed according to what is consonant with reason and good discretion." The conclusion we have reached, seems to us to be according to the "reason and intention" of the statutes referred to, and "according to what is consonant with reason and good discretion." *Vide* Sedgwick on Stat. and Const. Law, ch. 6 and 7, 225–383, and very numerous decisions cited by the author.

The decree sustaining the plea and dismissing the bill is reversed, and the cause remanded.